**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **SYLVIA GONZALEZ,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **CIVIL ACTION NO.** |
| **v.** | § | |
| | § | 3:26-cv-585 |
| **MITCHELL SERVICE COMPANY, LLC** | § | |
| **d/b/a MMC WORKFORCE SERVICES,** | § | |
| **and ARBOR E&T, LLC d/b/a** | § | |
| **EQUUS WORKFORCE SOLUTIONS,** | § | |
| | § | |
| **Defendants.** | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**I.**

**INTRODUCTION**

Sylvia Gonzalez (Plaintiff) files this Original Complaint against Mitchell Service Company, LLC d/b/a MMC Workforce Services (MSC) and Arbor E&T, LLC d/b/a Equus Workforce Solutions (Equus) (collectively Defendants).

**II.**

**PARTIES**

1.     Plaintiff is an individual and a citizen of Dallas County, Texas.

2.     Defendant MSC is a limited liability company with its principal place of business located at 105 Decker Court, Suite 1110, Irving, Texas 75062. MSC may be served with process, including citation and a copy of this petition, by serving its registered agent for service of process, C. Douglas Mitchell, 105 Decker Court, Suite 1100, Irving, Texas 75062, or wherever he may be found.

3.      Defendant Equus is a limited liability company with its principal place of business located at 805 N. Whittington Parkway, Suite 400, Louisville, Kentucky 40444. Defendant may be served with process, including citation and a copy of this petition, by serving its registered agent for service of process, Corporation Service Company dba CSC – Lawyers Incorporating Service Company, at 211 E. 7th Street, Suite 620, Austin, Texas 78701.

## III.

## JURISDICTION

4.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff asserts a claim arising under federal law.

5.      Defendants employ the requisite number of employees for coverage under the relevant federal statutes upon which Plaintiff's claims are based.

## IV.

## VENUE

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Defendant MSC resides in Dallas County, and pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in Dallas County.

7.      Dallas County lies within the Dallas Division of the Northern District of Texas, as set forth in 28 U.S.C. § 124(a)(1)/124(c)(3).

## V.

## <u>BACKGROUND FACTS</u>

8. Plaintiff was jointly employed by Defendants from July 5, 2022, until she was wrongfully terminated on or around October 14, 2022.

9. MSC is a staffing company that contracts with clients to provide temporary workers for their projects.

10. Once a position is available, MSC posts the position, locates a worker for that position, and the worker is hired for that specific position.

11. The worker becomes an MSC employee, they are paid by, coached and counseled by, and released by MSC.

12. The client, Equus, set the terms and conditions of employment, including controlling Plaintiff's schedule, rate of pay, position, daily work assignments, job responsibilities, discipline, and when the assignment ends.

13. On or around July 5, 2022, Plaintiff became jointly employed by MSC and Equus when she was hired by MSC to work as a job coach for Equus.

14. On or around July 18, 2022, Carlos Urbina became jointly employed by MSC and Equus when he was hired by MSC to work as an outreach coordinator for Equus.

15. At the time of Urbina's hire, he became Plaintiff's supervisor.

16. Urbina began sexually harassing Plaintiff and making unwelcomed sexual advances from the first day Plaintiff worked for him.

17. The same day Plaintiff met Urbina, Urbina walked up on a conversation Plaintiff was having with a maintenance employee, Jose.

18.    Urbina approached Plaintiff and Jose and told Jose to "stop talking to his girlfriend."

19.    Plaintiff disregarded Urbina's remark and continued speaking to Jose.

20.    Following the initial unwelcomed advance, Urbina continued to make comments about Plaintiff's appearance and clothes, refer to her as his girlfriend, and tell her she should be dating him.

21.    Plaintiff again attempted to ignore Urbina's remarks or would respond with comments like, "leave me out of the conversation."

22.    Plaintiff did not reciprocate Urbina's advances and at no time expressed any mutual interest in him.

23.    On or around October 10, 2022, Plaintiff was told to travel to the Red Bird Mall office with Urbina to meet with clients.

24.    Because Plaintiff was uncomfortable traveling alone with Urbina, she contacted her job coach, Luis Gutierrez, and asked if she could go with him instead.

25.    Plaintiff had previously explained to Gutierrez that Urbina made her uncomfortable due to inappropriate comments he made.

26.    Gutierrez told Plaintiff he was coming but did not arrive before they needed to leave.

27.    Urbina insisted that they leave immediately and take his vehicle, which they did.

28.    During the trip, Urbina asked Plaintiff what she had done that weekend. Plaintiff mentioned that she had lost her voice because she went to the Cowboy's game.

29.    Urbina told Plaintiff he loved women who were into sports and that she should be dating him.

30.    Plaintiff again resisted Urbina's advances and did not reciprocate.

31.    When Gutierrez arrived at the center, Plaintiff told him she wanted to ride back with him, but Gutierrez said she would have to ride back with Urbina.

32.    When Plaintiff arrived back at the office, she tried to locate Francisco (Frank) Garcia, Director of Grants, to report Urbina's conduct.

33.    Garcia was not available so Plaintiff went to her car and left for the day.

34.    The next day, October 11, 2022, Plaintiff reported Urbina's unwelcomed advances to Garcia.

35.    Garcia had Tammie Porter (Outreach Manager) join the meeting.

36.    Garcia and Porter told Plaintiff they would arrange a mediation to attempt to work out the problems between Plaintiff and Urbina.

37.    On October 12, 2022, Plaintiff was called into a meeting with Porter, Carmilla Goodson (Center Manager) and Urbina.

38.    When the meeting began, Plaintiff was instructed to tell Urbina what her complaint was.

39.    Plaintiff asked if Urbina had already been told the nature of the complaint, to which Urbina became agitated and insisted that Plaintiff just tell him why he was there.

40.    It was clear to Plaintiff that Urbina had already been told about her complaint.

41.    Plaintiff explained to Urbina all of the ways he had made her feel uncomfortable with his unwelcomed sexual comments and unwelcomed sexual advances.

42.    After Plaintiff spoke, Urbina was allowed to respond, at which point he degraded Plaintiff by saying she was "not his type" and "old enough to be my mother."

43.    Porter and Goodson did nothing to interrupt or Urbina's humiliating comments.

44. After the meeting, Plaintiff went back to the office and began processing what had just happened.

45. Porter approached Plaintiff and asked her if she was going to leave.

46. Plaintiff told Porter she wanted to wait and speak with Garcia.

47. Porter told Plaintiff she did not know if Garcia would be back, and pulled her into the office with Goodson after she could tell that Plaintiff was emotional about the meeting.

48. Plaintiff explained to Porter and Goodson that she was upset that they, as women in management, would allow Urbina to speak to her in such a degrading manner.

49. Goodson excused the behavior by saying "men are just like that," or words to similar effect.

50. Goodson also minimized Plaintiff's feelings, telling her she must be triggered by past trauma to be that upset about the comments.

51. On or around October 14, 2022, Plaintiff received a call from Lynett Hays at MSC, informing her that MSC and Equus were parting ways with Plaintiff.

52. Plaintiff asked for a reason, but Hays could not provide one and told Plaintiff she would need to speak with Daniel (last name unknown) or Hays.

53. Plaintiff attempted to call Daniel and Hays, but they did not answer her phone call.

54. Pursuant to Hays' instruction, Plaintiff went to MSC's office on October 17, 2022, to return the company computer.

55. Plaintiff asked to speak with Human Resources.

56. Plaintiff was allowed to speak with Hays and provide details about the sexual harassment she had faced and the "mediation" meeting that had taken place.

57.     Hays told Plaintiff that she had not been made aware of any of that and said that "no one should ever be put in that position."

58.     Hays promised Plaintiff she would look into it and get back to her, but Plaintiff never heard from Hays again.

59.     Equus controlled access to Plaintiff's employment opportunities and denied or interfered with Plaintiff's employment opportunities based on unlawful criteria when it ended her assignment immediately following her complaint of sexual harassment.

60.     MSC controlled access to Plaintiff's employment opportunities and denied or interfered with Plaintiff's employment opportunities based on unlawful criteria when it failed or refused to reassign her to another position after Equus removed her from the assignment.

61.     Following the EEOC investigation, the EEOC issued a cause finding on Plaintiff's retaliation claims, determining that:

> Based on all the evidence disclosed during the investigation, *I conclude that there is reasonable cause to believe Respondent Equus discriminated against Charging Party by terminating her employment after she opposed sex-based discrimination*, in violation of Title VII of the Civil Rights Act of 1964, as amended. Further, I find Respondent *Equus failed to investigate and take prompt corrective action after they were made aware Charging Party had engaged in protected activity* where she reasonably opposed sex-based conduct, in violation of Title VII.
>
> With regard to Respondent MSC, evidence shows that after MSC informed Charging Party that her assignment with Equus had been discontinued, she was informed that she could apply for available positions posted on MSC's website as this is their staffing model. Evidence fails to show Charging Party applied to any of MSC's vacant positions; however, testimony obtained during the investigation shows that MSC has made exceptions to their staffing model and proactively sought another employer assignment for employee(s) when other employees' assignments end prematurely. Evidence obtained during the investigation did not support MSC made any attempts to similarly place Charging Party with another employer when her assignment with Equus prematurely ended. Thus, *I find reasonable cause in that MSC failed to assist Charging Party with procuring other employment after her assignment was discontinued by Equus, for engaging in protected activity; thereby terminating her employment* and denying

---

**Plaintiff's Original Complaint**                                                      **Page 7**

her equal terms and conditions extended to similarly situated employees who had not engaged in a protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended. Further, *I find Respondent MSC failed to investigate and take prompt corrective action after they were made aware that Charging Party had engaged in protected activity where she reasonably opposed sex-based conduct, in violation of Title VII.* (emphasis added)

## VI.

## CONDITIONS PRECEDENT

62.    Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission and the Texas Workforce Commission.

63.    The Charge was filed within 180 days after the date on which the complained of employment practices were committed.

64.    The EEOC issued a cause determination and right to sue on the Charge.

65.    Plaintiff has timely exhausted all administrative remedies.

## VII.

## CAUSES OF ACTION

A.    **First Cause of Action—Sex Discrimination/Sexual Harassment—Hostile Work Environment—Supervisor Liability—Title VII**

66.    Plaintiff incorporates each of the foregoing paragraphs.

67.    Defendants discriminated against Plaintiff because of Plaintiff's sex, and subjected Plaintiff to a sexually hostile work environment.

68.    Urbina's conduct permeated Plaintiff's workplace with discriminatory intimidation, ridicule, and insult, and was sufficiently severe and pervasive to alter the conditions of Plaintiff's employment and create an abusive working environment.

69.    Because Urbina was Plaintiff's supervisor, Defendants are vicarious liable for Urbina's harassing conduct.

70.     Defendants' actions violated 42 U.S.C. § 2000e-2(a).

**B.     Second Cause of Action—Sex Discrimination/Sexual Harassment—Hostile Work Environment—Negligence—Title VII**

71.     Plaintiff incorporates each of the foregoing paragraphs.

72.     Defendants discriminated against Plaintiff because of Plaintiff's sex, and subjected Plaintiff to a sexually hostile work environment.

73.     Urbina's conduct permeated Plaintiff's workplace with discriminatory intimidation, ridicule, and insult, and was sufficiently severe and pervasive to alter the conditions of Plaintiff's employment and create an abusive working environment.

74.     Defendants knew, or in the exercise of reasonable care should have known that Urbina was sexually harassing Plaintiff.

75.     Defendants failed to take reasonable care to prevent and promptly correct Urbina's harassing behavior.

76.     Defendants' actions violated 42 U.S.C. § 2000e-2(a).

**C.     Third Cause of Action—Sex Discrimination—Discriminatory Discharge—Title VII**

77.     Plaintiff incorporates each of the foregoing paragraphs.

78.     Defendants terminated Plaintiff's employment and/or constructively discharged Plaintiff because of Plaintiff's sex-gender.

79.     Defendants' actions violated 42 U.S.C. § 2000e-2(a).

**D.     Fourth Cause of Action—Unlawful Retaliation—Title VII**

80.     Plaintiff incorporates each of the foregoing paragraphs.

81.     Plaintiff engaged in protected activity as set forth in 42 U.S.C. § 2000e-3(a).

82.     In response, Defendants retaliated against Plaintiff and ultimately terminated Plaintiff's employment and/or constructively discharged Plaintiff.

83.    Defendants' actions violated 42 U.S.C. § 2000e-3(a).

## VIII.

## DAMAGES

84.    Plaintiff incorporates each of the foregoing paragraphs.

85.    Defendants' actions violated 42 U.S.C. § 2000e-2(a) and 42 U.S.C. § 2000e-3(a), which entitles Plaintiff to recover from Defendants back pay, front pay, as well as pre-judgment and post-judgment interest.

86.    Plaintiff is also entitled to recover from Defendants compensatory damages as provided for under 42 U.S.C. § 1981a(a)(1).

87.    Because Defendants' actions were done with malice and/or reckless indifference to Plaintiff's federally-protected rights, Plaintiff is entitled to recover from Defendants punitive damages as provided for under 42 U.S.C. § 1981a(a)(1) and (b)(1).

88.    Plaintiff seeks all damages available under federal law.

## IX.

## ATTORNEYS' FEES AND COSTS

89.    Plaintiff incorporates each of the foregoing paragraphs.

90.    Plaintiff retained the services of undersigned counsel to prosecute Plaintiff's claims.

91.    Pursuant to 42 U.S.C. § 2000e-5(k), Plaintiff is entitled to recover a reasonable attorneys' fee from Defendants, including reasonable expert fees and costs.

**X.**

**INTEGRATED ENTERPRISE/**
**JOINT EMPLOYER/JOINT AND SEVERAL LIABILITY**

92.    Defendants are an integrated enterprise.

93.    Defendants have interrelated operations, and/or centralized control of labor relations and other employment decisions, and/or common management, and/or common ownership and/or financial control.

94.    Defendants jointly exerted authority over Plaintiff's employment and/or had the right to exert authority over Plaintiff's employment.

95.    Defendants are joint employers of Plaintiff.

96.    Defendants are jointly and severally liable for Plaintiffs' injuries and damages.

**XI.**

**RESPONDEAT SUPERIOR**

97.    Plaintiff incorporates each of the foregoing paragraphs.

98.    Defendants are liable for the acts and/or omissions of their respective agents, representatives, employees, servants, and officers.

**XII.**

**INJUNCTIVE AND DECLARATORY RELIEF**

99.    Plaintiff incorporates each of the foregoing paragraphs.

100.    Plaintiff requests the Court enter an order providing injunctive and declaratory relief including, but not limited to:

      a.    Prohibiting Defendants from engaging in unlawful discrimination;

      b.    Reinstating Plaintiff's employment with Defendants with backpay;

      c.    Reporting to the Court on the manner of compliance with the terms of a final order issued by this Court;

d.  Paying court costs;

e.  A declaration that Defendants violated Plaintiff's rights under state and federal law, engaged in unlawful employment discrimination, and considered an illegal factor in terminating Plaintiff's employment; and

f.  Any additional equitable relief as the Court deems proper.

## XIII.

## JURY DEMAND

101.  Plaintiff incorporates each of the foregoing paragraphs.

102.  Plaintiff demands a trial by jury.

## XIV.

## CONCLUSION AND PRAYER

103.  Plaintiff respectfully requests that Defendants be cited to appear and answer, and that upon final trial of this matter, the Court enter judgment against Defendants, jointly and severally, awarding Plaintiff:

A.  Back pay and front pay (including benefits);

B.  Compensatory damages;

C.  Punitive damages;

D.  Injunctive and declaratory relief, including but not limited to, an Order:

a.  Prohibiting Defendants from engaging in unlawful discrimination;

b.  Reinstating Plaintiff's employment with Defendants with backpay;

c.  Reporting to the Court on the manner of compliance with the terms of a final order issued by this Court;

d.  Paying court costs;

e.    A declaration that Defendants violated Plaintiff's rights under state and federal law, engaged in unlawful employment discrimination, and considered an illegal factor in terminating Plaintiff's employment; and

f.    Any additional equitable relief the Court deems proper;

E.    Courts costs;

F.    Pre-judgment and post-judgment interest at the rate set by law; and

G.    All legal or equitable relief this Court deems proper.

Respectfully submitted,


/s/ Matthew R. Scott
MATTHEW R. SCOTT
Texas Bar No. 00794613
matt@sgtlawgroup.com
JAMIE J. GILMORE
Texas Bar No. 24045262
jamie@sgtlawgroup.com
BRITTNEY L. THOMPSON
Texas Bar No. 24104618
brittney@sgtlawgroup.com
**SCOTT GILMORE THOMPSON PLLC**
Founders Square
900 Jackson Street, Suite 550
Dallas, Texas 75202
214-965-9675 / 214-965-9680 (Facsimile)
**ATTORNEYS FOR PLAINTIFF**